UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| REAL STONE VENEERS | ) | |
| OF TENNESSEE, LLC, and | ) | |
| BRIAN MOODY, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:19-cv-33 |
| | ) | |
| v. | ) | Judge Curtis L. Collier |
| | ) | Magistrate Judge Christopher H. Steger |
| REAL STONE OF AMERICA, LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## M E M O R A N D U M

Before the Court are three motions to dismiss the third amended complaint (Doc. 28) in

this matter. (Docs. 31, 32, 33.) Plaintiffs have responded (Doc. 35), and Defendants have replied

(Doc. 39). For reasons stated below, the Court will **DENY** the motions to dismiss. (Docs. 31, 32,

33.)


## I.    BACKGROUND[1]

This case concerns a business dispute between a company which manufactures stone

veneer products and a company which manufactures concrete blocks. (*See* Doc. 28.)

Plaintiff Brian Moody ("Moody") is the sole owner and principal of Plaintiff Real Stone

Veneers of Tennessee, LLC ("RSV"). (*Id.* ¶ 2.) RSV was formed in 2007, and has since

manufactured and sold thin, natural-stone veneers which can be adhered to concrete blocks. (*Id.*

---

[1] This summary of the facts accepts all of the factual allegations in Plaintiffs' Complaint
as true, *see Gunasekera v. Irvwin*, 551 F.3d 461, 466 (6th Cir. 2009), with the exception of any
bare legal conclusions couched as factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 680
(2009).

¶¶ 13-14.)  RSV is a small, family-owned business with less than ten employees in its office, and approximately forty-five in its manufacturing facilities.  (*Id.* ¶ 21.)

Around 2016, RSV was asked by one of its distributors, SiteOne Landscaping Supply, to develop a unique line of stone veneer blends which would be endorsed by American artist Bob Timberlake, and dubbed the "Timberlake Line."  (*Id.* ¶ 27.)  RSV invested extensive time, resources, and money developing the specialized line of veneers.  (*Id.*)

In 2017, RSV was contacted by a company named Pentablock USA, LLC ("Pentablock"). Pentablock was formed on February 17, 2017 by organizer Christopher Wilson to engage in the manufacture of interlocking concrete blocks.  (*Id.* ¶ 37.)  Pentablock had no employees in the stone business, and hoped RSV would educate the company about stone veneers and help with research and development.  (*Id.* ¶ 42.)  Pentablock also requested to lease an RSV manufacturing facility in Dunlap, Tennessee, for manufacturing its concrete blocks.  (*Id.* ¶ 43.)

Pentablock was wholly owned by Davis Family Office, LLC ("Davis Family Office").  (*Id.* ¶ 38.)  The managers of Davis Family Office were also employees, board members, or shareholders of a company called Atlantic Pacific Equipment, Inc. ("At-Pac").  (*Id.*)  At-Pac, Davis Family Office, and Pentablock all listed the same principal office location with the Georgia Secretary of State.  (*Id.*)

The managing director of Pentablock, Phillip Murray, ultimately entered into discussions with Moody about the prospect of Pentablock purchasing RSV.  (*Id.* ¶ 44.)  In October 2017, Pentablock and RSV entered into a non-disclosure agreement so that confidential business information and trade secrets could be freely shared between the companies.  (*Id.* ¶ 45.)  On March 15, 2018, the parties reached an agreement on the specific details of the sale, and entered into a term sheet contract.  (*Id.* ¶ 46.)  The term sheet stated that Moody was to receive 5% of

Pentablock's shares, which were to immediately vest in full, even if the parties' planned sale failed, or if an irreconcilable dispute arose between them.  (*Id.* ¶ 49.)  The parties then began to exchange proprietary information and trade secrets, including know-how, research, processes, techniques, and designs related to the stone veneer and concrete block manufacturing industries.  (*Id.* ¶ 50.)  Additionally, Moody and RSV permitted Pentablock to move into the Dunlap manufacturing facility in February, and provided expertise and employees to assist Pentablock in setting up operations, all before the parties had finalized any lease or manufacturing agreement.  (*Id.*)  On April 1, 2018, the parties entered into a formal lease for Pentablock's use of RSV's Dunlap manufacturing facility.  (*Id.* ¶ 51.)

On May 1, 2018, James Dirr, an in-house attorney for At-Pac, organized Real Stone of America, LLC ("RSA") as a limited liability company for the purpose of providing billing and marketing services to RSV.  (*Id.* ¶¶ 53, 54.)  RSA, however, was set up sharing common ownership and management with Pentablock.  (*Id.* ¶ 53.)  To help effectuate a smooth purchase of RSV by Pentablock, RSV agreed to transition one of its key employees, Lance Edwards ("Edwards"), to become an employee of RSA, and to allowed him to continue using a truck owned by RSV while he conducted business for RSA.  (*Id.* ¶ 55.)

On June 6, 2018, Pentablock and RSV entered into a manufacturing agreement, under which RSV agreed to produce Pentablock products consisting of interlocking cement blocks with natural stone veneer adhered to the blocks.  (*Id.* ¶ 59.)  Pursuant to the agreement, RSV was to provide administrative and accounting services related to the manufacture of the Pentablock products.  (*Id.*)  The parties' October 2017 non-disclosure agreement was merged into confidentiality obligations contained in the manufacturing agreement.  (*Id.* ¶ 61.)

In August 2018, Pentablock offered different, much less favorable terms for the purchase RSV, and Moody decided to decline proceeding with the sale of RSV to Pentablock. (*Id.* ¶ 64.)

The next month, RSV learned that Edwards had disclosed its Timberlake Line blend sheets to SiteOne, Pentablock, and RSA, without RSV's consent. (*Id.* ¶ 81.) Around the same time, RSA recruited Maggie Gramling ("Gramling"), an RSV employee, to leave RSV and work for RSA. (*Id.* ¶ 79.) She left RSV in October 2018. (*Id.*) Both Edwards and Gramling continued to use the same email addresses they used while employed with RSV for their business communications on behalf of RSA. (*Id.* ¶¶ 159-163.) In November 2018, Edwards attempted to access and delete RSV's Facebook page, even though he had left RSV's employ months earlier. (*Id.* ¶ 85.) And in December 2018, RSV discovered that RSA had posted RSV's photographs of RSV's products on RSA's website, purportedly as depictions of products sold by RSA. (*Id.* ¶ 84.)

Plaintiffs brought this lawsuit on February 8, 2019, alleging three counts of breach of contract (counts 1-3), two counts of misappropriation of trade secrets (counts 4-5), and sole counts of intentional interference with business relationships (count 6), conversion (count 7), unjust enrichment (count 8), copyright infringement (count 9), unfair competition (count 10), quantum meruit (count 11), and alter ego (count 12). (Docs. 1, 28.) In addition to the allegations in the background section, Plaintiffs made specific allegations regarding the creation and officers of the Defendant companies, as well as further details regarding statements made during negotiations for the purchase of RSV by Pentablock, among other detailed allegations. (*See* Doc. 28.)

Pentablock moves to dismiss counts one, eleven, and twelve for failure to state a claim upon which relief can be granted. (Doc. 32.) RSA, Edwards, and Gramling move to dismiss counts six, eleven, and twelve for failure to state a claim for which relief can be granted. (Doc. 33.) Last, At-Pac and Davis Family Office move to dismiss count twelve for failure to state a

claim upon which relief can be granted, and join in the motions at Documents 32 and 33. (Doc. 31.)

## II.   <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 8, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) operates to test the sufficiency of a plaintiff's complaint in stating a claim under this rule. *See* Fed. R. Civ. P. 12(b)(6).

The first step in testing the sufficiency of the complaint requires the Court to assume the truth of all well-pleaded factual allegations, but not bare legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" under the Rule 12(b)(6) pleading standard. *Ashcroft*, 556 U.S. at 678. That is, "a plaintiff's obligation to provide the 'grounds' of [his or her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan*, 478 U.S. at 286).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the Court to determine whether those allegations "state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage of a case, all reasonable inferences are drawn in favor of the plaintiff. *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017). But "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Under Federal Rule of Civil Procedure 9(b), when alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a complaint of fraud, 'at a minimum, must allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *United States v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 830 (6th Cir. 2018) (quoting *United States ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 444 (6th Cir. 2008)). However, Rule 9 further provides, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

If a party presents matters outside the pleadings in connection with a motion to dismiss, the court must either exclude those matters from consideration, or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Documents attached to pleadings are considered part of the pleadings for all purposes, however, Fed. R. Civ. P. 10(c), and a court's consideration of documents referred to in a complaint and integral to the claims does not convert a motion to dismiss into a motion for summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

III.  **ANALYSIS**

A.  **Count One**

Pentablock moves to dismiss count one of the amended complaint (breach of contract related to the term sheet) for failure to state a claim upon which relief can be granted.  (Doc. 32.) At-Pac and Davis Family Office join in the motion, though the parties are not named in count one. (Doc. 31 at 14-15.)  In particular, Pentablock argues (1) the count is only brought by RSV, and RSV lacks standing to bring a breach of contract claim on behalf of Moody, and (2) the complaint does not allege Pentablock breached any obligation owed to RSV, or proximately caused any harm to RSV.  (Doc. 32 at 8-11.)

As to the first argument, Pentablock presents an initial theory that count one is only brought by RSV.  Pentablock focuses on the first paragraph of that count, which states "RSV hereby adopts by reference each and every paragraph of the Facts and allegations stated in this Complaint as if fully and completely set forth herein."  (*See id.*; Doc. 28 ¶ 88.)  Pentablock then argues that RSV lacks standing to bring a breach of contract claim on behalf of Moody, but concedes that Moody, as an alleged third-party beneficiary, may have standing bring a contract claim on behalf of himself.  (Doc. 32 at 9.)

Paragraph eighty-eight of the amended complaint is an incorporation-by-reference paragraph regularly used by lawyers to bring all of the factual allegations of the complaint into the claim.  As Plaintiffs correctly point out, Pentablock cites no authority in support of its theory that the mention of only one party in an incorporation-by-reference paragraph somehow mandates that only that party is bringing the claim.  (*See* Doc. 35 at 6.)  Moody is referenced in at least four other paragraphs otherwise contained within count one.  (*Id.*)  Paragraph ninety-four, for instance, states "[t]he terms of the Term Sheet indicate that both RSV and Pentablock intended for Moody to

receive 5% of Pentablock's shares with minority and other protections." (Doc. 28 ¶ 94.) Paragraph ninety-five states, "Pentablock's failure to tender its shares to Moody . . . has resulted in breach of the term sheet and has caused Moody to suffer damages." (*Id.*) These paragraphs suffice as "short and plain" statements of the claim which show that Moody is alleging he is entitled to relief due to Pentablock's breach of contract. Fed. R. Civ. P. 8(a)(1). Contrary to Pentablock's detailed criticism of the incorporation-by-reference paragraph, "[n]o technical form [of pleading] is required." *Id.* 8(d)(1). The Court does not otherwise see how this paragraph must serve to restrict the Court's interpretation of which party is bringing a claim for breach of contract under count one. Accordingly, the Court will not proceed to consider Pentablock's argument regarding RSV's standing to assert count one. Moody asserts a count of breach of contract as to the term sheet.

As to Pentablock's second argument, Pentablock states that count one is deficient because Plaintiffs do not allege a full breach of contract claim against it. (Doc. 32 at 9-11.) In particular, it argues that Plaintiffs have not alleged Pentablock breached any obligation owed to RSV, or proximately caused any harm to RSV, by not honoring the term sheet. (Doc. 32 at 9-11.) The thrust of the argument is that the term sheet only bound Pentablock to issue shares to Moody, but contained no further meaningful obligations to RSV of which Pentablock could possibly, or did, breach.

"To establish a claim for breach of contract under Tennessee law, a plaintiff must show: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach." *Woodall v. DSI Renal, Inc.*, No. 11-2590, 2012 WL 1038626, at *6 (W.D. Tenn. Mar. 27, 2012). "The 'complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Id.* at *7 (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008)).

The "great weight of authority" recognizes a "direct enforceable right" arising from a contract promising performance to an intended beneficiary. *See* 13 Williston on Contracts § 37:7 (4th ed.); *see also Smith v. Chattanooga Med. Inv'rs, Inc.*, 62 S.W.3d 178, 185 (Tenn. Ct. App. 2001) (an intended beneficiary may maintain an action on a contract).

First, the Court finds that Plaintiffs have alleged a breach of contract claim by making allegations as to Pentablock's failure to tender Moody shares under the term sheet. Plaintiffs have alleged the existence of an enforceable contract—the term sheet—of which Pentablock and RSV were signatories. (Doc. 28 ¶ 89.) Plaintiffs attach the term sheet to the amended complaint. (*See* Doc. 28-2.) Plaintiffs allege that the terms required Pentablock to issue 5% of its shares to Moody, which were to immediately vest in full. (Doc. 28 ¶ 48.) Plaintiffs allege that Moody was an intended third-party beneficiary of the term sheet. (*Id.* ¶ 92.) Plaintiffs allege that Pentablock failed to tender its shares to Moody. (*Id.* ¶ 95.) Last, Plaintiffs also allege this caused Moody to suffer damages. (*Id.*)

Second, Plaintiffs also allege that a failure to perform as contractually bound towards the intended third-party beneficiary "caused RSV to suffer damages." (Doc. 28 ¶ 91.) Plaintiffs allege "RSV suffered both direct and consequential damages from Pentablock's breach," including the costs of advisors for negotiations and due diligence, the costs of RSV employee time for assisting Pentablock in developing manufacturing procedures, and the costs of teaching RSV's know-how and trade secrets. (*See id.*) RSV alleges that it only provided these efforts because of, and as consideration for, the term sheet's promise to Moody, which Pentablock allegedly breached. (*See id.*)[2]

---

[2] The Court notes that the parties have not provided briefing on a contracting party's ability to bring a breach of contract claim specific to the context of third-party beneficiary doctrine. "Third party beneficiary doctrine presents certain difficulties when the rights of the promisee are

Plaintiffs have stated a plausible breach of contract claim regarding the term sheet in the amended complaint. *Twombly*, 550 U.S. at 570.

The Court will **DENY** the motion to dismiss count one of the amended complaint. (Doc. 32 at 8.)

**B.    Count Six**

RSA, Edwards, and Gramling move to dismiss count six of the amended complaint (intentional interference with business relationships) for failure to state a claim upon which relief can be granted. (Doc. 33 at 8-10.) At-Pac and Davis Family Office join in the motion, though they are not named in the count. (Doc. 31 at 14-15.)

The parties agree that the elements required to show intentional interference with business relationships derive from *Trau-Med of America, Inc. v. Allstate Insurance Co.*, 71 S.W.3d 691, 701 (Tenn. 2002). (Docs. 33 at 8, 35 at 11.) Those elements are,

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means, and finally, (5) damages resulting from the tortious interference.

*Trau-Med*, 71 S.W.3d at 701 (internal citation omitted).

RSA, Edwards, and Gramling argue Plaintiffs have not alleged sufficient facts showing the fourth element—an improper motive or means in interfering with any business relationship. (Doc. 31 at 14-15.)

---

considered. While it may be problematic to subject the promisor to suits by both the creditor and the promisee, it is even more problematic to deny the promisee the right to sue on a contract for which it supplied the consideration." 13 Williston on Contracts § 37:54 (4th ed.).

*Trau-Med* cited the following methods as examples which would constitute improper interference under the fourth element:

> those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

*Trau-Med*, 71 S.W.3d at 701 n.5.

RSV argues it has pleaded numerous specific facts in line with these examples in alleging the fourth element of intentional interference with business relationships. In particular, it points to seven different allegations in the amended complaint which it argues show improper motive or means. (Doc. 35 at 12-13.) For example, RSV alleges RSA engaged in unfair competition by adopting the trade name "Real Stone of America," and a logo very similar to RSV's logo, in a way intended to deceive or cause confusion and mistake among consumers in violation of the Lanham Act. (*Id.* at 12.) Because this allegation involves the violation of a statute, it alleges an improper means in order to establish intentional interference with a business relationship under the standards stated in *Trau-Med*. *See Trau-Med*, 71 S.W.3d at 701 n.5. In another example, RSV alleges Edwards and Gramling, individually and as agents of RSA, misused RSV's confidential business and trade secret information, including its customer, supplier and vendor lists, proprietary systems and processes, custom stone blend recipes, and pricing information, to damage RSV's relationships with its customers and others in violation of the Defend Trade Secrets Act and the Tennessee Uniform Trade Secrets Act. (Doc. 35 at 12-13.) A specific allegation regarding these counts involves Edwards' disclosure of RSV's Timberlake Line blend sheets to SiteOne, Pentablock, and RSA. (Doc. 28 ¶¶ 27-36, 81.) These counts involve both the violation of statutes and the misuse

of inside or confidential information, and thus allege improper means in order to establish intentional interference with a business relationship under the standards stated in *Trau-Med*. *See Trau-Med*, 71 S.W.3d at 701 n.5.

Defendants do not address these examples given by Plaintiffs in their reply brief. (*See* Doc. 39 at 8-10.) Instead, Defendants take issue with only one of the example allegations Plaintiffs point to as supporting a claim of intentional interference with a business relationship. (*See id.*)[3] Even without this disputed example, the Court finds RSV has alleged numerous other improper actions to support this claim.

The Court will **DENY** the motion to dismiss count six of the amended complaint. (Doc. 33.)

## C.      Count Eleven

Pentablock moves to dismiss count eleven of the amended complaint (*quantum meruit*) because it argues that the relief Plaintiffs seek was governed by a contract. (Doc. 32 at 11-13.) At-Pac, Davis Family Office, and RSA join in the motion. (Docs. 31 at 14-15, 33 at 11-12.)

Count eleven seeks reimbursement for administrative and accounting services provided to RSA and Pentablock during 2018. (*See* Doc. 28 ¶ 219.) Pentablock argues that any costs Plaintiffs seek regarding these services are either governed by the manufacturing agreement between the parties, or not recoverable at all. (*See* Doc. 32 at 11.) Pentablock believes that this contract precludes a *quantum meruit* claim because the first element a party must prove to succeed on a claim for *quantum meruit* is the nonexistence of an enforceable contract. (Doc. 39 at 10.)

---

[3] Defendants focus on an allegation by RSV that Edwards and Gramling continued to use their RSV email addresses in communications for RSA in order to intentionally misrepresent RSA's continued association with RSV. (*See id.*) Defendants argue Plaintiffs have not met the heightened pleading standard for alleging misrepresentation under Rule 9, and thus, that Plaintiffs cannot establish any improper motive or means by Edwards or Gramling. (*See id.*)

Federal Rule of Civil Procedure 8 allows a party to set out two "or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). Rule 8 further provides that a "party may state as many separate claims or defenses as it has, regardless of consistency." *Id.* 8(d)(3).

In count eleven, Plaintiffs state, "RSV believes the administrative and accounting services that RSV provided for Pentablock are reimbursable costs to manufacture Pentablock Products under paragraph 2.2.1 of the Manufacturing Agreement, and that Pentablock's failure to reimburse RSV for these costs is a breach of the Manufacturing Agreement as alleged in Count Three." (*Id.* ¶ 221.) Count three alleges that Defendants breached a contract, namely, the manufacturing agreement. (*Id.* ¶¶ 112-126.) However, the count further provides, "*[i]n the alternative, in the event these services are found not to constitute reimbursable costs under the Manufacturing Agreement*[] . . . [t]hese services are not addressed in any other agreement between Pentablock and RSV, therefore *in this alternative scenario*, no enforceable contract would exist between RSV and Pentablock regarding the administrative and accounting services that RSV provided for Pentablock." (*Id.* ¶ 222 (emphasis added).) In that case, Plaintiffs allege they are entitled to recovery under an implied contract, *quantum meruit* theory.

This type of alternative pleading is expressly permitted by Rule 8, and is further supported by applicable caselaw.

In *Son v. Coal Equity, Inc.*, the United States Court of Appeals for the Sixth Circuit examined this issue, stressing that the course of litigation "is never certain" and that the Federal Rules of Civil Procedure "permit pleading in the alternative and even the pleading of inconsistent claims." 112 F. App'x 797, 802 (6th Cir. 2004). The appeals court stated, "we believe that the *quantum meruit* claim should remain as an alternative theory available to the plaintiff, at least

13

until the contract claim is concluded. To hold otherwise might prove to be premature and would fail to adequately protect the rights reserved by [the plaintiff]." *Id.* District courts within the Sixth Circuit have found similarly. *See U.S. ex rel. Mesa Assocs., Inc. v. PAS-COY, LLC*, No. 3:12-CV-568, 2013 WL 3834038, at \*2 (E.D. Tenn. July 23, 2013) (collecting cases); *see also Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 567 (E.D. Tenn. 2019) (finding it "unavailing" to assert argument that claims should be dismissed because party cannot plead claims for express and implied contracts as alternatives under Tennessee law). This Court agrees with those opinions.

Plaintiff, if successful on this alternative claim, will not be able to recover on the contract claim, and vice versa, but that does not mean Plaintiff is legally precluded from pleading both theories at this stage of the case. *See Son*, 112 F. App'x at 802. (*See also* Doc. 35 at 18 ("RSV does not seek a double recovery for the value of its administrative and accounting services rendered to Pentablock.").)

The Court notes that the parties spend a portion of their briefs disputing the import of an integration clause in the manufacturing agreement. (*See* Docs. 32 at 12, 35 at 17, 39 at 11.) The clause states in part that the manufacturing agreement and attached exhibits "constitute the entire, final, complete and exclusive agreement between the Parties and supersede all previous agreements or representations, written or oral, with respect to the subject matter of th[e] agreement . . ." (Doc. 35 at 17.) Defendants argue this clause precludes any recovery of costs beyond the manufacturing agreement. (Doc. 39 at 11.) This argument, however, ignores the possibility, however remote or not, that the manufacturing agreement *itself* could found to be an invalid contract. In such a case, the services would not be reimbursable under the manufacturing agreement, no enforceable contract would exist between RSV and Pentablock regarding the

administrative and accounting services, and a *quantum meruit* theory could provide for alternative recovery.

Last, the Court notes that Pentablock cites two opinions which granted motions to dismiss on plaintiffs' implied contract claims due to an express contract between the parties. (*See* Doc. 32 at 12 (citing *Jack Tyler Engineering Co., Inc. v. TLV Corp.*, No. 07-2580 STA-dkv, 2008 WL 2998840, at *2 (W.D. Tenn. July 31, 2008) and *Doe v. BlueCross BlueShield of Tenn., Inc.*, No. 2:17-cv-02793-TLP-cgc, 2018 WL 3625012 (W.D. Tenn. July 30, 2018).) In each of those cases, the parties had agreed that an express contract completely controlled the partys' relationship. And in *Doe*, the court specifically found the contract at issue to be both enforceable and controlling. *See Doe*, 2018 WL 3625012 (W.D. Tenn. July 30, 2018). The reasoning of those cases is thus inapplicable, here, where Defendants have not appeared to concede that the costs at issue were fully covered by an enforceable and controlling contract. (*See* Docs. 35 at 18, 39 at 11.) The Court otherwise declines to address the strength of Plaintiffs' breach of contract claim in count three at this stage of proceedings.

The Court will **DENY** the motion to dismiss count eleven of the amended complaint. (Doc. 32.)[4]

### D. Count Twelve

At-Pac and Davis Family Office move to dismiss count twelve of the amended complaint (alter ego) for failure to state a claim upon which relief can be granted. (Doc. 31.) Pentablock and RSA join in the motion. (Docs. 32 at 14, 33 at 11-12.)

---

[4] Because the Court denies the motion to dismiss as to count eleven in whole, it does not address an argument by Plaintiff that a *quantum meruit* claim should survive as to RSV, in particular, because it was not a party to the manufacturing agreement. (Doc. 35 at 18-19.)

Defendants At-Pac and Davis Family Office first point out that count twelve is the only cause of action which has been asserted against them. (Doc. 31 at 8.) At-Pac and Davis Family Office's primary argument is that piercing a company's corporate veil under a theory of alter ego requires an element of fraud, subject to a heightened pleading standard, which Plaintiffs have not met. (*See id.* at 8-9.)

Tennessee courts are cautious to pierce the corporate veil, as there is a "presumption of corporate regularity." *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012) (quoting *Schlater v. Haynie*, 833 S.W.3d 919, 925 (Tenn. Ct. App. 1991)). "There is a presumption that a corporation is a distinct entity, separate from its shareholders, officers, directors or affiliated corporations, and the party wishing to negate the existence of such separate entity has the burden of proving facts sufficient to justify piercing the corporate veil." *Schlater*, 833 S.W.3d at 925 (quoting 18 C.J.S. Corporations, § 18, p. 290). Mere dominance of a corporation by another corporation or its shareholders is insufficient to justify piercing the corporate veil. *Edmunds*, 403 S.W.3d at 831; *see also Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 439 (Tenn. Ct. App. 2008).

The Supreme Court of Tennessee has held that three elements are required to pierce the corporate veil between a corporation and its subsidiary:

> (1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
>
> (2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Cont'l Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979);

*see also Edmunds*, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012) (citing three elements required by

*Cont'l Bankers*); *Elec. Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691

S.W.2d 522, 526 (Tenn. 1985) (same). Subsequent decisions have reinforced the idea that there

must be a finding that the second element has been alleged—the corporate form must have been

used to commit fraud or wrongdoing. *See Cambio Health Solutions, LLC et al. v. Reardon*, 213

S.W.3d 785, 790 (Tenn. 2006) (holding plaintiff must "show that a shareholder exercised complete

control over a subsidiary and used that control to commit fraud or a wrong"); *see also Se. Tex.*

*Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 679 (6th Cir. 2006) (stating Tennessee law requires

plaintiff allege fraud or injustice resulting from misuse of the corporate form).

When considering whether to pierce the corporate veil, courts will consider whether the

corporation was used to commit fraud or wrongdoing, as stated above, but must also consider

factors commonly referred to as *Allen* factors:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation
> was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole
> ownership of stock by one individual; (5) the use of the same office or business
> location; (6) the employment of the same employees or attorneys; (7) the use of the
> corporation as an instrumentality or business conduit for an individual or another
> corporation; (8) the diversion of corporate assets by or to a stockholder or other
> entity to the detriment of creditors, or the manipulation of assets and liabilities in
> another; (9) the use of the corporation as a subterfuge in illegal transactions; (10)
> the formation and use of the corporation to transfer to it the existing liability of
> another person or entity; and (11) the failure to maintain arms length relationships
> among related entities.

*FDIC v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984); *see also Marshall v. Jackson*, No. M2007-

01764-COA-R3-CV, 2008 WL 5156312, *6 (Tenn. Ct. App. Dec. 8, 2008) (citing the factors and

noting they are commonly referred to as *Allen* factors). Generally, every *Allen* factor does not

need to be met, nor will any single *Allen* factor be dispositive in determining whether to pierce the corporate veil. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 215 (Tenn. 2012).

Plaintiffs argue in their response brief that a showing of fraud is not required to pierce the corporate veil so long as "other factors showing abuse of the corporate form are present." (Doc. 35 at 19.) Plaintiffs cite the Supreme Court of Tennessee's decision in *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 215 (Tenn. 2012), as evidence for their sole reliance on the *Allen* factors. (*Id.* at 20.) Specifically, Plaintiffs quote the *Rogers* court's reference to fraud as a "factor" and its holding that "[n]o single factor among those listed is conclusive, nor is it required that all of these factors support piercing the corporate veil; typically, courts will rely on a combination of the factors in deciding the issue." *Rogers*, 367 S.W.3d at 215 (citing *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. June 30, 2003)). Plaintiffs also rely on a decision by the Court of Appeals for the Sixth Circuit, *Kutty v. U.S. Department of Labor*, in which the court interpreted Tennessee law to require a showing of fraud *or* wrongdoing *or* unjust act. (Doc. 35 at 20) (emphasis in original) (citing *Kutty v. U.S. Dep't of Labor*, 764 F.3d 540, 552-53 (6th Cir. 2014).) Plaintiffs note several other cases which they believe to stand for the proposition that they need not allege that fraud occurred. (*See* Doc. 35 at 21.)

Defendants again argue in their reply that allegations of fraud or wrongdoing meet the requirement laid out in *Continental Bankers*, but allegations of only *Allen* factors will not suffice. (Doc. 39 at 13.) The Court agrees with Defendants on this point, and finds that some wrongdoing must be alleged as to a defendant's use of the corporate form.

The paragraph in *Allen* that immediately precedes the list of factors states, "[t]hus, in an appropriate case . . . a corporation and the individual or individuals owning all of its stock and assets will be treated as identical . . . where used as a cover for *fraud* or *illegality* . . ." *Allen*, 584

F.Supp at 397 (emphasis added). The *Allen* court then goes on to state, "[f]actors to be considered in determining whether to disregard the corporate veil include *not only* whether the entity has been used to work a fraud or injustice in contravention of public policy, *but also*: [the *Allen* factors]." *Id.* (emphasis added.) The plaintiff in *Allen* could still only pierce the corporate veil after it alleged fraudulent activity. *See id.* at 398.

In *Rogers*, the Tennessee Supreme Court upheld a decision to deny the plaintiff the opportunity to pierce the corporate veil, citing no allegation of "fraud or injustice in contravention of public policy *and*" no combination of the *Allen* factors. *Rogers*, 367 S.W.3d at 216 (emphasis added); *see also Pamperin*, 267 S.W.3d at 439. And in *Kutty v. U.S. Department of Labor*, the Sixth Circuit stated, "Tennessee law allows piercing of the corporate veil only where control over a corporation has 'been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.'" *See Kutty*, 764 F.3d at 553 (quoting *Cont'l Bankers*, 578 S.W.2d at 632). In explaining its reasoning, the *Kutty* court stated that "because the record supports that nearly all of the Tennessee factors for piercing the corporate veil were present *and* the entities were used to commit a 'wrong,' we conclude that the ALJ did not err in deciding to pierce the corporate veil and hold Kutty personally liable." *Id.* (emphasis added). A few additional cases cited by Plaintiffs more accurately stand for the proposition that fraud, injustice, or wrongdoing must be alleged in addition to some of the *Allen* factors. *See, e.g.*, *Dog House Invs., LLC v. Teal Prop., Inc.*, 448 S.W.3d 905, 918 (Tenn. Ct. App. 2014) ("When determining whether piercing the corporate veil is appropriate, the court must consider whether the corporate 'entity has been used to work a fraud or injustice in contravention of public policy *and* also: [*Allen* factors]") (emphasis added).

Though agreeing with Defendants on the applicable standard, the Court finds that Plaintiffs have successfully met it through their allegations.

Defendants do not seriously dispute that Plaintiff has successfully alleged several of the *Allen* factors. (Doc. 35 at 21-23.) Plaintiffs have alleged sole ownership of stock by one individual, use of the same office or business location, employment of the same employees or attorneys, and a failure to maintain arm's length relationships among related entities. (Doc. 35 at 23.)

As to use of the corporate form to commit wrongdoing, Plaintiffs allege that Pentablock, At-Pac, Davis Family Office, and RSA employees made intentional misrepresentations in regard to the solvency and capitalization of Pentablock, its ability to purchase RSV, and its ability to pay RSV amounts due under the lease and manufacturing agreements when negotiating those documents. (*See* Doc. 28 ¶¶ 65-69.) RSV alleges Pentablock, At-Pac, RSA, and Davis Family Office employees bragged about the wealth of At-Pac owners and their past business successes. (*See id.* ¶¶ 66-69.) RSV alleges the names of specific employees who made the statements, as well as the approximate times they made them, and the content of what was said. (*See id.*) RSV alleges that intentional misrepresentations were made regarding the efficacy of Pentablock's manufacturing process and equipment. (*See id.* ¶¶ 70-71.) And RSV alleges that intentional misrepresentations were made regarding RSA's capitalization and solvency to serve as a billing and marketing provider for RSV. (*Id.* ¶ 72.)

These misrepresentations allow for an inference of wrongdoing in use of the newly formed corporate entities of Pentablock and RSA, in that Moody was allegedly lured into engaging with them due to a false sense of security. In addition, these misrepresentations do not form the underlying causes of action, avoiding any issues with "bootstrapping" this required element. *See*

*Se. Tex. Inns, Inc.*, 426 F.3d at 674. While the Court is mindful of the presumption that a corporation's separate identity should only be set aside with great caution, *Schlater*, 833 S.W.2d at 925, the Court is also mindful that, at this stage of the case, all reasonable inferences are drawn in favor of Plaintiffs, *Mills*, 869 F.3d at 479. Plaintiffs have successfully alleged a plausible claim for alter ego in order to survive a motion to dismiss.

The Court will **DENY** the motion to dismiss count twelve of the amended complaint. (Doc. 31.)

IV. <u>**CONCLUSION**</u>

The Court will **DENY** the motions to dismiss. (Docs. 31, 32, 33.)

**An Order Will Enter.**

<u>/s/</u>
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**